UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHELLE WOODARD, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> REST HAVEN CHRISTIAN SERVICES, d/b/a ) <br> REST HAVEN CENTRAL, ) <br> ) <br> Defendant. ) | Case No. 07 C 0665 <br><br> Judge Joan B. Gottschall |

## MEMORANDUM OPINION & ORDER

Plaintiff Michelle Woodard has filed a Title VII employment discrimination lawsuit against Defendant Rest Haven Christian Services, d/b/a Rest Haven Central ("Rest Haven"), alleging sex discrimination as provided in the Pregnancy Discrimination Act, Pub. L. No. 95-555, 92 Stat. 2076 (1978) ("PDA"), which amended Title VII. *See* 42 U.S.C. § 2000e(k). Woodard seeks relief under theories of disparate treatment and disparate impact. Rest Haven has moved for summary judgment.

### BACKGROUND[1]

Woodard was employed with Rest Haven from 2002 to some time in 2006 as a Certified Nursing Assistant ("CNA"). At the time of the alleged discrimination, Woodard was working

---

[1] The following facts are taken from the parties' Local Rule 56.1 statements, and are not disputed unless indicated. At the summary judgment stage, the court is only to consider facts that are supported by evidence that would be admissible at trial. *Scott v. Edinburg*, 346 F.3d 752, 759–60 & n.7 (7th Cir. 2003). Both parties have raised various admissibility objections as to many of their opponent's proposed statements of fact, especially hearsay objections, relevancy objections, and authentication objections. To the extent that facts are not supported by admissible evidence, the court has not considered them. To the extent that facts are considered herein, they are deemed relevant. To the extent that issues of authentication have been raised, the court follows Rule 901(a) of the Federal Rules of Evidence, which requires "evidence sufficient to support a finding that the matter in question is what its proponent claims." *See Smith v. City of Chicago*, 242 F.3d 737, 741 (7th Cir. 2001).

approximately thirty hours per week. Woodard became pregnant near the end of 2005, and on February 24, 2006, she gave her supervisor a note from her doctor which stated that "My patient is pregnant and is required to be on light duty, 'sitting mostly' until the end of her pregnancy." The parties refer to this as a request for "light duty." Rest Haven declined to accommodate this request as written, and did not seek any clarification from Woodard or from Woodard's doctor as to the precise limitations Woodard's pregnancy required. Woodard was not permitted to work on February 24, 2006, and was taken off of Rest Haven's work schedule. Neither party suggests that Woodard's performance prior to February 24, 2006 was deficient.

The parties dispute why Rest Haven declined to accommodate Woodard's request. Rest Haven takes the position that it has a non-written policy whereby it will accommodate only light duty requests made by employees who are injured on the job (hereinafter referred to as "the policy"). Woodard disputes that the policy exists, and even assuming it does exist, Woodard argues that it is not uniformly applied. Woodard contends that the reason for the denial is that Rest Haven discriminates on the basis of pregnancy.

The parties disagree as to the precise definition of "light duty." Woodard argues that this term means that there is a reduction and/or modification in job function that complies with an employee's medical restrictions. Rest Haven objects that this definition is insufficient, asserting that light duty also assumes that the temporary disability was caused by an on-the-job injury. *See* Def. Resp. to Pl.'s Local R. 56.1(b)(3)(C) Stmt. of Add'l Facts at 13 (Doc. No. 93). The parties agree that the tasks a recipient of light duty is required to perform vary depending upon the circumstances of the particular employee's medical restrictions—indeed, Rest Haven describes the light-duty work requirements as being "invented" to reflect what the employee is capable of doing.

The parties also dispute how Woodard's employment with Rest Haven concluded. Both parties agree that Woodard was not permitted to work at Rest Haven during the pendency of her pregnancy. Rest Haven takes the position that Woodard was never terminated, but voluntarily resigned by failing to return to work after her pregnancy. Rest Haven states that Woodard was taken off of the work schedule because she could not complete her CNA responsibilities, but that her job was held open until sometime in the summer of 2006. Woodard disagrees, taking the position that she was terminated on February 24, 2006. Both parties agree that when Woodard applied for unemployment benefits on or about February 27, 2006, Rest Haven contested her application.

## ANALYSIS

### I. Legal Standards

#### A. Summary Judgment

Summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Brengettcy v. Horton*, 423 F.3d 674, 680 (7th Cir. 2005). All facts, and any inferences to be drawn from them, must be viewed in the light most favorable to the non-moving party. *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 756 (7th Cir. 2008). An issue of material fact as to *one* element of Woodard's claim is insufficient to deny Rest Haven summary judgment unless Woodard has provided evidence to support all the other elements of the Title VII claim that she must ultimately prove. *Lewis v. City of Chicago*, 496 F.3d 645, 652 (7th Cir. 2007).

#### B. Sex Discrimination and Title VII

Title VII of the Civil Rights Act of 1964 prohibits unlawful employment discrimination on the basis of sex. 42 U.S.C. § 2000e-2. In 1976, the Supreme Court concluded that discrimination

3

on the basis of pregnancy was not the same as discrimination on the basis of sex. *See Gen. Elec. Co. v. Gilbert*, 429 U.S. 125 (1976) (upholding exclusion of pregnancy-related disabilities from disability plan). Congress overruled *Gilbert* by passing the PDA. *See Newport News Shipbuilding & Dry Dock Co. v. EEOC*, 462 U.S. 669, 678–79 & nn. 15–17 (1983) (discussing legislative history of the PDA). The PDA amended 42 U.S.C. § 2000e(k), which is part of the definitional section of Title VII. After enactment of the PDA, the section now reads:

> The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work . . . .

§ 2000e(k). "As a definitional amendment, the PDA provides no substantive rule to govern pregnancy discrimination." *Scherr v. Woodland Sch. Cmty. Consol. Dist. No. 50*, 867 F.2d 974, 978 (7th Cir. 1988). Rather, the PDA borrows from existing Title VII remedies, and plaintiffs may proceed under either a theory of "disparate treatment—intentional discriminatory treatment of employees based on impermissible criteria," or "disparate impact—facially neutral practices that nevertheless have a discriminatory impact and are not justified by business necessity." *Id.* Woodard is proceeding under both theories.

## II.     Disparate Treatment

Woodard has opted to proceed under the indirect method of proof of disparate treatment, and must navigate the *McDonnell Douglas* framework. *Clay v. Holy Cross Hosp.*, 253 F.3d 1000, 1005 (7th Cir. 2001). Woodard must first establish a *prima facie* case of discrimination. Doing so creates a rebuttable presumption of discrimination, which Rest Haven may defeat by identifying a legitimate, nondiscriminatory reason for the adverse employment action suffered by Woodard.

Woodard would then have to show that this reason is discriminatory or is mere pretext for discrimination. *Id.*

To establish a *prima facie* case, Woodard must show (1) that she was pregnant (a member of a protected class) and her employer knew that she was pregnant; (2) that she was performing her duties satisfactorily; (3) that she suffered an adverse employment action; and (4) similarly situated employees not in the protected class were treated more favorably. *Id.*

A. <u>*Prima Facie* Case</u>

There is no dispute that Woodard has satisfied the first element. There is also no meaningful question that Woodard has satisfied the third element by showing that she suffered an adverse employment action. In addressing this issue, the parties focus on whether Woodard was terminated. While termination may be relevant in calculating damages, that dispute is not material to Rest Haven's summary judgment motion. Woodard must show only "that she suffered a materially adverse change in the terms or conditions of her employment because of her employer's conduct." *Spring v. Sheboygan Area Sch. Dist.*, 865 F.2d 883 (7th Cir. 1989) (ADEA case). A minor change in working hours, a change in shifts, or a reassignment may not constitute a materially adverse action by itself. *See, e.g.*, *Kocsis v. Multi-Care Mgmt.*, 97 F.3d 876, 885 (6th Cir. 1996) ("[R]eassignments without salary or work hour changes do not ordinarily constitute adverse employment decisions in employment discrimination claims."); *Wood v. Summit County Fiscal Office*, 579 F. Supp. 2d 935, 955 (N.D. Ohio 2008) (change of starting time by half hour insufficient); *Mills v. Autozone Stores*, No. 3:07-1477-CMC-JRM, 2008 WL 3010118, at *7 (D.S.C. July 31, 2008) (unpublished) (noting that change in shifts is insufficient, but reduction from 50 to 20–28 hours is sufficient). But here, both parties agree that Woodard was taken off of the work schedule as a result of her informing Rest Haven of her pregnancy and need for light duty work. A

5

change in working hours as dramatic as this, from just under full-time to no-time for a period of at least several months, constitutes a materially adverse change.

The second element—satisfactory performance—is more contentious, though it should not be. In analyzing whether Woodard has satisfactorily performed, Rest Haven insists that she has not, arguing that Woodard could no longer perform the tasks necessary as a CNA after she produced her doctor's note and asked for light duty. Though the court will eventually reach this issue, it will not do so while determining whether Woodard has established a *prima facie* case for discrimination. Rest Haven's argument regarding Woodard's inability to *continue* performing after presentment of the doctor's note speaks to Rest Haven's allegedly legitimate reason for taking the adverse action. That inquiry is not relevant to the first stage of *McDonnell Douglas*. "For purposes of the *prima facie* case analysis [in PDA cases], a plaintiff's qualifications are to be assessed in terms of whether he or she was meeting the employer's expectations prior to and independent of the events that led to the adverse action." *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 573 (6th Cir. 2006). Put another way, Rest Haven is challenging Woodard's *prima facie* case by alleging the same legitimate, non-discriminatory reason that it argues justifies the adverse employment action Woodard suffered. As the Tenth Circuit has explained,

> When an employee's failure to meet objective, employer-imposed criteria is one of the legitimate, non-discriminatory reasons advanced by an employer to dispel the inference of discrimination raised by an employee at the prima facie stage, it cannot also be used to defeat the employee's prima facie case. To hold otherwise would be tantamount to collapsing the first and second stages of the McDonnell Douglas analysis and would deny a plaintiff the opportunity to demonstrate that the defendant's explanation for the adverse employment action is pretextual.

*E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1193 (10th Cir. 2000). The Seventh Circuit has adopted a very similar approach in Title VII cases. *See Elkhatib v. Dunkin Donuts, Inc.*, 493 F.3d 827, 830–31 (7th Cir. 2007) (noting that where plaintiff alleges that the discipline itself

is discriminatory, then "it makes little sense in this context to determine whether she was meeting [the employer's] legitimate expectations. Rather, [the employer's] argument is more appropriately considered in our analysis of pretext.") (quoting *Curry v. Menard, Inc.*, 270 F.3d 473, 478 (7th Cir. 2001)). There is no dispute that Woodard performed adequately prior to her presentment of the doctor's note. Pursuant to *Tysinger*, *Horizon/CMS Healthcare*, and *Elkhatib*, Woodard has satisfied the second element.

The fourth element of a *prima facie* case is whether similarly situated employees have received more favorable treatment. The parties disagree as to what category of employees are an appropriate comparator, and their positions align with an apparent split in the circuits. Rest Haven argues that, pursuant to its policy, the only appropriate comparators are those who became disabled off the job, relying on the reasoning of *Spivey v. Beverly Enterprises*, 196 F.3d 1309 (11th Cir. 1999), that a pregnant employee should be compared only to those who are *qualified* for the work-modification program pursuant to the employer's policy. *Id.* at 1312. The facts in *Spivey* are similar to the case at bar. *Spivey* involved a suit brought under the PDA. The employer in that case had a policy of permitting work modifications only for those injured on the job. The *Spivey* court concluded that comparators must be limited to others who became disabled due to an event off the job, for to hold to the contrary would grant a pregnant woman an inappropriate preference—*i.e.*, she would be treated like those injured on the job, even though her disability originated off the job. *Id.*

Woodard argues that *Spivey* was decided in error, and points instead to the Sixth Circuit's reasoning in *Ensley-Gaines v. Runyon*, 100 F.3d 1220 (6th Cir. 1996). The *Ensley-Gaines* court concluded that the court is to undertake the similarly-situated analysis by looking to any other employee who has an equivalent ability (or inability) to perform the job, including those who became temporarily disabled due to a workplace injury. *Id.* at 1226. ("Accordingly, when a Title

7

VII litigant alleges discrimination on the basis of pregnancy in violation of the PDA, in order to establish a *prima facie* case of discrimination, she must demonstrate only that another employee who is similarly situated in her or his ability or inability to work received more favorable benefits."). The Sixth Circuit reached this conclusion by focusing explicitly on the text of the PDA, which provides that a person protected under the PDA "shall be treated the same . . . as other persons not so affected but similar in their ability or inability to work . . . ." 42 U.S.C. § 2000e(k). In *dicta*, the Tenth Circuit also indicated that it approved of this approach, for "[i]f a plaintiff is compared only to non-pregnant employees injured off the job, her case would be 'short circuited' at the prima facie stage and she would be denied the opportunity to show that the policy, which may be facially neutral, is actually a pretext for unlawful discrimination." *Horizon/CMS Healthcare Corp.*, 220 F.3d at 1195 n.7; *see also Parker v. Albertson's, Inc.*, 325 F. Supp. 2d 1239, 1247–48 (D. Utah 2004) (following the "short-circuited" analysis).

This court need not resolve this dispute. Rest Haven's argument is premised on its allegedly legitimate reason for its adverse employment action, which should occur in stage two of *McDonnell Douglas*. However, the facts here do not present the risk of "short circuiting" that bothered the Tenth Circuit, for even under the more exacting standard requested by Rest Haven, Woodard still establishes a *prima facie* case.

Woodard has presented evidence—albeit scant—of individuals who were treated more favorably then she when they became temporarily disabled off the job. "The similarly-situated requirement should not be applied mechanically or inflexibly, but rather is a common-sense flexible inquiry that seeks to determine whether there are enough common features between the individuals to allow a meaningful comparison." *Eklhatib*, 493 F.3d at 831. Woodard has pointed to several employees who were temporarily disabled as a result of an off-the-job injury, but who were treated

more favorably; two will suffice for the purpose of establishing her *prima facie* case. Woodard's former supervisor was permitted to use a wheelchair and was permitted to work on crutches after having knee injuries, and although the supervisor's job description was not identical to Woodard's, the supervisor noted that as Director of CNAs she engaged in "total care" as needed, including assisting with lifting and other activities performed by CNAs on at least an occasional basis. Although the supervisor stated that she was not limited by her injury in her ability to perform her job, the record suggests the contrary; she noted that she *re*-injured the knee because she declined to stay in the wheelchair when her job demanded that she perform activities that she could not accomplish from the wheelchair. The supervisor also presented a doctor's note ordering "light duty," which Rest Haven states it rejected, but unlike Woodard, the supervisor was permitted to continue working with crutches and/or a wheelchair. Another example is a fellow CNA who presented a medical note to Rest Haven stating that she "should refrain from bending or lifting > 15 lbs. for three weeks." This CNA continued working during the three-week period, suggesting that she was given some sort of accommodation by Rest Haven, or that Rest Haven ignored the doctor's limitation.[2]

From this evidence, Woodard has sufficiently established a *prima facie* case of discrimination.

---

[2] Rest Haven objects that there is no evidence as to the source of that CNA's disability, nor that she complied with the doctor's note. *See* Def.'s Resp. to Pl.'s Local R. 56.1(b)(3)(C) Stmt. of Add'l Material Facts 20 (Doc. No. 93). The question is whether Rest Haven enforced its purported policy that no modified work would be permitted absent an on-the-job injury. Although Woodard has not shown that the other CNA became disabled off the job, that is the most reasonable inference given the lack of any records to the contrary in the CNA's personnel file. As to the issue of complying with the doctor's note, there is no suggestion that *Woodard* had an option to continue working; rather, she was told she was being taken off the schedule because she was not eligible for "light duty." The same was not true for the comparator CNA, nor, for that matter, for Woodard's supervisor.

B. Legitimate Reason and Pretext

Rest Haven responds that it had a legitimate reason to discontinue Woodard's work as a CNA, and points to its policy limiting light duty to those injured on the job and deposition statements from a number of its senior staff stating that this policy is consistently enforced.[3]

Woodard has the burden of showing by a preponderance of the evidence that this reason is a pretext for discrimination. *Adelman-Reyes v. Saint Xavier Univ.*, 500 F.3d 662, 666 (7th Cir. 2007). "Without direct evidence of pretext (*e.g.*, an admission), a plaintiff may show pretext by presenting evidence 'tending to prove that the employer's proffered reasons are factually baseless, were not the actual motivation for the discharge in question, or were insufficient to motivate the discharge.'" *Nawrot v. CPC Intern.*, 277 F.3d 896, 906 (7th Cir. 2002) (quotation omitted). "But pretext requires more than a showing that the decision was 'mistaken, ill considered or foolish, [and] so long as [the employer] honestly believed those reasons, pretext has not been shown.'" *Id.* (modifications in original).

Woodard can point to no direct evidence of pretext, but attempts to call the policy into question by noting that (1) this policy does not appear in writing, either in any employee handbook or manual or otherwise; (2) this policy is not mentioned during any orientation (though the fact that light duty is available for on-the-job injuries is mentioned), (3) Woodard herself was never told of

---

[3] Woodard attempts to put the existence of the policy at issue in part by alleging that Compliance Officer Johanna Zandstra and Educator Linda Schutt did not know of any specific policy regarding the treatment of individuals injured outside of the workplace. *See* Pl. Stmt. of Add'l Facts ¶¶ 28, 29. These alleged facts cannot be accepted as true, for Woodard provides only brief and clearly incomplete deposition excerpts. Although all facts must be construed in the light most favorable to Woodard at this stage, the court cannot find that a fact is at issue based on partial and incomplete deposition excerpts.

10

this policy prior to February 24, 2006, and (4) as noted in the previous section, there appear to be instances where the policy was not uniformly enforced.[4]

A policy need not be written to be enforceable. *See Piraino v. Int'l Orientation Res., Inc.*, 84 F.3d 270, 275 (7th Cir. 1996). However, if a policy is not uniformly enforced such that a jury could call into question whether the enforcement of the policy was merely pretext for discrimination on the basis of pregnancy, then that question will need to go to a jury. *See Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1040 (7th Cir. 1993). From this record, there is reason to doubt that Rest Haven's policy is uniformly enforced—as described *supra* when considering similarly situated employees, at least some employees have been granted modified work, whether it is labeled "light duty" or an "accommodation."

In response to Woodard's statement of undisputed facts, Rest Haven notes that at least some of the employees who received work accommodations were themselves pregnant, and Rest Haven argues that this shows that it harbored no animus toward pregnant employees. The court cannot agree that this has been definitively established. Both parties agree that most pregnant employees who request light duty are denied it under the policy. To the extent that the parties have introduced evidence that some exceptions to the policy have been made, most are to the benefit of non-pregnant employees. While Woodard has not presented an overwhelming case of pretext, she has put this element at issue, such that it will need to be resolved by a jury.

Rest Haven's motion for summary judgment on the claim of discriminatory treatment is denied.

---

[4] Woodard also calls into question whether the policy is a smart business decision, arguing that Rest Haven has not conducted sufficient studies or gathered sufficient evidence to support such a policy. These arguments will not be considered; as noted above, a policy may be "ill considered" or "foolish" without being pretextual. *Nawrot*, 277 F.3d at 906.

## III. Disparate Impact

A disparate impact claim under the PDA may proceed "if it could be shown that the policy weighed more heavily on pregnant employees than on nonpregnant ones and that it was not justified by compelling considerations of business need." *Dormeyer v. Comerica Bank-Ill.*, 223 F.3d 579, 583 (7th Cir. 2000). The plaintiff must first identify a particular policy, and then show that the policy causes a disparate impact on the basis of sex. *See Allen v. City of Chi.*, 351 F.3d 306, 311 (7th Cir. 2003); *Vitug v. Multistate Tax Comm'n*, 88 F.3d 506, 513 (7th Cir. 1996). Upon establishment of impact, the defendant must demonstrate that the practice is "job related" and "consistent with business necessity." 42 U.S.C. § 2000e-2(k)(1)(A)(i); *Allen*, 351 F.3d at 311. "If the defendant makes this showing, plaintiffs can still prevail by demonstrating that an alternative employment practice exists, and the defendant refuses to adopt it." *Allen*, 351 F.3d at 311–12 (citing § 2000e-2(k)(1)(A)(i)).

Woodard has identified a particular policy—Rest Haven's limitation of light-duty work to those who are disabled on the job. Rest Haven argues that Woodard has failed to show that this policy has a disparate impact on the basis of sex, and points to *Vitug*, 88 F.3d 506, for its statement that a plaintiff must offer "statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotion because of their membership in a protected group." *Id.* at 513 (quoting *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994 (1988)). Woodard responds that she does not need an expert since Rest Haven itself admits that no pregnant employee is eligible for the policy, implying that 100% of pregnant employees will be rejected for light-duty. Woodard argues that since non-pregnant employees are granted light duty, the policy must therefore have a greater impact on pregnant employees.

12

The court is unaware of any precedent on the appropriate statistical model for PDA cases, but since the PDA confirms that discrimination on the basis of pregnancy is "sex discrimination," *see Newport News*, 462 U.S. at 684–85, it would appear to follow that "the statistical analysis under a disparate impact theory is the traditional 'sex discrimination' analysis," that is, the percentage of females who have been disparately affected compared to the percentage of males who have been disparately affected. *EEOC v. Warshawsky & Co.*, 768 F. Supp. 647, 654 (N.D. Ill. 1991). No such evidence is before the court.

Even if this court were to focus only on the impact Rest Haven's policy has on pregnant employees (instead of the broader category of all female employees)—which is an arguable position since the PDA defines its protected class as "women affected by pregnancy, childbirth, or related medical conditions," § 2000e(k)—Woodard has not produced evidence that every pregnant employee, or even every pregnant CNA, would necessarily require light-duty at some time during her pregnancy. The court is not at liberty to assume this fact. Rather, the only fact that can be assumed is that, if the policy is uniformly enforced, 100% of those pregnant women *who apply for light duty* will be denied. But the court is unaware how many pregnant employees applied and/or were rejected.

Woodard has failed to establish that Rest Haven's policy has a disparate impact on women or pregnant employees. Accordingly, Rest Haven's motion for summary judgment on the disparate impact claim is granted.

## CONCLUSION

Rest Haven's motion for summary judgment is granted regarding the disparate impact claim, and denied as to the disparate treatment claim.

ENTER:

    /s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: March 16, 2009